1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FIRST AMERICAN TITLE INSURANCE
COMPANY,

                          Plaintiff,

        v.

NORTHWEST TITLE COMPANY LLC,

                          Defendant.

CASE NO. 2:21-cv-01057-JHC

ORDER ON CROSS MOTIONS FOR PARTIAL
SUMMARY JUDGMENT

# I

## INTRODUCTION

This matter comes before the Court on the parties' cross motions for partial summary judgment.  Dkt. ## 23, 26.  The Court has considered the materials filed in support of, and in opposition to, the motions, the applicable law, and the balance of the case file.  Being fully advised, the Court GRANTS Plaintiff's motion and DENIES Defendant's motion.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## II

### BACKGROUND

Plaintiff First American Title Insurance Company (First American) sues Defendant Northwest Title Company LLC (NexTitle) based on Defendant's failure to remit premiums as required under agreements between the parties. *See generally* Dkt. # 17. Between 2009 and 2016, Plaintiff and Defendant entered into four limited agency agreements in Arizona, Idaho, Oregon, and Washington, ("Agency Agreements"). Dkt. ## 25 at 4–89; 27–1; 27–2; 27–3. Defendant was the insurance agent for Plaintiff, and it agreed to hold premiums it collected for Plaintiff in connection with the issuance of title insurance policies. Dkt. ## 25 at 7–8, 33, 56–57, 82; 27–1 at 13; 27–2 at 5–6; 27–3 at 5–6. The Agency Agreements required Defendant to remit premiums to Plaintiff "[w]ithin thirty (30) days from the end of the calendar month in which the closing related to the Policy/Policies was consummated." *Id*. The Agreements also required Defendant to "safely maintain and preserve all property…entrusted to [it] by [Plaintiff]." Dkt. ## 25 at 7, 32, 56, 79; 27–1 at 10; 27–2 at 5; 27–3 at 5.

Defendant used software to track the premiums. Dkt. # 24 at 2. When it transitioned to new software around 2012, Defendant accrued a backlog of premiums collected but not remitted. *Id*. Starting in 2012, Plaintiff worked with Defendant to train employees to resolve remittance issues. *Id*. And on February 13, 2018, Cynthia Kilgore, Plaintiff's Senior IT Consultant, emailed Gerry Guerin, Defendant's National Director of Title Operations, listing action items related to the training, including the "[n]eed to schedule a final policy and audit and clean up all records on the remittance component." *Id*. at 8–9.

In 2019, Plaintiff exercised its right to audit Defendant. Dkt. # 24 at 20–40. During that time, Plaintiff and Defendant continued to correspond about cleaning up files and remitting all unpaid premiums. Dkt. ## 24 at 8–160; 27 at 2. In May 2019, Kilgore and Guerin corresponded

1    about retrieving data from Defendant's systems from October 2010 to 2019.  Dkt. # 24 at 12.  On

2    September 17, 2019, Kilgore created a spreadsheet of outstanding premiums on policies from

3    2010 to 2019.  *Id*. at 21.  And on October 11, 2019, Kilgore; Paul Hamman, Plaintiff's Agency

4    State Manager for Alaska, Washington, Oregon, and Idaho; Jace Perry, an employee of

5    Defendant; and Jared Larsen, President of Defendant, discussed the Policy Count Review, and

6    Plaintiff requested additional records from Defendant to resolve outstanding balances on

7    premiums.  *Id*. at 46.  Hamman continued to follow up with Defendant about the additional data

8    and, in response, Larsen explained that he believed there were "payoff agreements in place that

9    [] deemed [Defendant's] payments in full of past due amounts owed."  *Id*. at 44–45.  Hamman

10   asked for a copy of these agreements and Larsen responded that Defendant's legal counsel was

11   out of town, but he would send the agreements as soon as he received them.  *Id*. at 43–44.  The

12   record does not appear to contain copies of any such payoff agreements.  *See generally* Dkt.

13        In April 2020, the parties entered agreements to a terminate the Agency Agreements

14   ("Termination Agreements").  Dkt. # 25 at 91–109.  Each of the Termination Agreements

15   provide: "Immediately following the Termination Date, [Defendant] will comply with all of the

16   obligations of [Defendant] following termination provisions set forth in the Agency Agreement,

17   and, at the appropriate time, all other obligations which survive termination of the Agency

18   Agreement."  *Id.* at 93, 98, 103, 108.

19        Plaintiff contends—and Defendant does not dispute—that "in the spring of 2021,

20   [Defendant] stopped cooperating in the Audit Project, informing [Plaintiff] that it no longer

21   planned to audit and remit unpaid premiums on policies more than six years old."  Dkt. # 24 at 6.

22   Similarly, Plaintiff contends—and Defendant does not dispute—that, "[s]ince that time,

23

24

ORDER ON CROSS MOTIONS FOR PARTIAL
SUMMARY JUDGMENT 3

1

2

[Defendant] has also failed to remit the unpaid premiums Plaintiff calculated on policies less than six years old." *Id.*  *See also* Dkt. # 30–1 at 4.[1]

3

4

5

6

7

Plaintiff filed suit in August 2021 for breach of the Agency Agreements, breach of fiduciary duty, and conversion,[2] seeking to recover all unpaid premiums.  Dkt. # 1.  Later that year, Plaintiff filed an amended complaint adding a new claim for breach of the Termination Agreements.  Dkt. # 17.  The parties now cross move for partial summary judgment.  *See generally* Dkt. ## 23, 26.

8

9

10

11

12

13

14

15

16

Plaintiff seeks a summary judgment ruling that Defendant breached its fiduciary duty by refusing to remit all unpaid premiums.  Dkt. # 23 at 1.  In the alternative, Plaintiff seeks a ruling that Defendant breached the Agency Agreements and Termination Agreements by refusing to remit all unpaid premiums.   *Id.*  Lastly, if the Court denies its first two requests, Plaintiff seeks a ruling that Defendant breached the Agency Agreements by refusing to remit unpaid premiums less than five years old in Idaho, and less than six years old in Arizona, Oregon, and Washington. *Id.*[3]  Defendant seeks a summary judgment ruling that the statute of limitations bars Plaintiff's breach of contract claims for premiums due before August 9, 2015, and several of Plaintiff's breach of fiduciary duty and conversion claims.  Dkt. # 26 at 4–10.

17

18

19

20

21

22

23

24

---

[1] Defendant claims that it has offered to pay the timely-raised premiums during settlement discussions.  Dkt. # 29 at 11–12.  It is debatable whether the Court can consider this offer under Fed. R. Evid. 408, since it arguably goes to the "validity . . . of a . . . claim," but even if it could, Defendant has not asserted that it has made an unconditional offer to pay these newer premiums.

[2] Despite pleading a conversion claim in its Complaint, Plaintiff does not address this claim in a separate section of its motion.

[3] The limitations period for a breach of fiduciary duty claim is two years in Arizona and Oregon, three years in Washington, and four years in Idaho.  *Rindlisbacher v. Steinway & Sons Inc.*, 497 F. Supp.3 d 479, 493 (D. Ariz. 2020); *Caligiuri v. Columbia River Bank Mortg. Group*, Civ. No. 07-3003-PA, 2007 WL 1560623, *1, *5 (D. Or. May 22, 2007) (citing O.R.S. § 12.1100(1)); *Jones v. Runft, Leroy, Coffin & Matthews, Chtd.*, 125 Idaho 607, 614, 873 P. 2d 861 (1993) (citing Idaho Code Ann. § 5-224); *Hudson v. Condon*, 101 Wash. App. 866, 872-73, 6 P. 3d 615 (2000) (citing RCW 4.16.080(3)).  The limitations period for a breach of contract claim is five years in Idaho and six years in Arizona, Oregon, and Washington.  Ariz. Rev. Stat. § 12-548; Idaho Code Ann. § 5-216; Or. Rev. Stat. § 12.080; RCW 4.16.040(1).

ORDER ON CROSS MOTIONS FOR PARTIAL
SUMMARY JUDGMENT 4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

### III

### DISCUSSION

A.    Summary Judgment

Summary judgment is appropriate when there is no dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). A fact is "material" if it may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party."  *Far Out Prods., Inc. v. Oskar*, 247 F. 3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248–49).

The moving party bears the initial burden of showing there is no genuine dispute of material fact and that it is entitled to prevail as a matter of law.  *Celotex*, 477 U.S. at 323.  If the moving party does not bear the ultimate burden of persuasion at trial, it can show the lack of such a dispute in two ways: (1) by producing evidence negating an essential element of the nonmoving party's case, or (2) by showing that the nonmoving party lacks evidence of an essential element of its claim or defense.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000).  If the moving party meets its initial burden, the burden then shifts to the nonmoving party to identify specific facts from which a fact finder could reasonably find in the nonmoving party's favor.  *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 252.  If the moving party bears the burden of persuasion at trial, it bears the burden of proof as to each material fact on which it has the burden of persuasion at trial.  *S. Calif. Gas. Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003).  And Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing to establish the existence of an element

essential to that party's case, and on which they will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322–23.

The Court is "required to view the facts and draw reasonable inferences in the light most favorable to the [nonmoving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh evidence or make credibility determinations because those are "jury functions, not those of a judge." *Anderson*, 477 U.S. at 249–50. But the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).

B.    Plaintiff's Breach of Fiduciary Duty Claim

Washington courts have described a fiduciary relationship as one that "imparts a position of peculiar confidence placed by one individual in another.[4] A fiduciary is a person with a duty to act primarily for the benefit of another." *Guarino v. Interactive Objects, Inc.*, 122 Wash. App. 95, 128, 86 P. 3d 1175 (2004) (citing *Goodyear Tire & Rubber Company v. Whiteman Tire, Inc.*. 86 Wash. App. 732, 741–42, 935 P.2d 628 (1997)). The Agency Agreements impose this duty by requiring Defendant to "safely maintain and preserve all property…entrusted to [it] by [Plaintiff]." Dkt. ## 25 at 7, 32, 56, 79; 27–1 at 10; 27–2 at 5; 27–3 at 5; *see also* Dkt. # 25 at 6–7, 31, 55 (Defendant "expressly acknowledges that all Escrow Funds are held strictly in a

---

[4] Arizona, Oregon, and Idaho have substantially the same law. *See Korlann v. E-Z Pay Plan, Inc.*, 247 Or. 170, 177–8, 428 P. 2d 172 (1967); *Country Cove Dev., Inc. v. May*, 143 Idaho 595, 603, 150 P. 3d 288 (206); *Wade Baker & Sons Farms v. Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints*, 136 Idaho 1922, 928, 42 P. 3d 715 (Ct. App. 2002); *Urias v. PCS Health Sys., Inc.*, 211 Ariz. 81, 87, 118 P. 3d 29 (2005).

fiduciary capacity as a settlement agent and that Premiums are held for the benefit of [Plaintiff].").  Defendant does not dispute that it was Plaintiff's fiduciary.  *See* Dkt. # 30–1 at 2.

i.      Statute of Limitations

There is a three-year statute of limitations for breach of fiduciary duty claims in Washington State.[5]  RCW 4.16.080(3); *Hudson v. Condon*, 101 Wash. App. 866, 872–73, 6 P.3d 615 (2000).  The parties disagree about when a claim for breach of fiduciary duty would have accrued, and thus whether Plaintiff's claims are barred by the statute of limitations.  Defendant contends that individual claims for breach of fiduciary duty would have accrued after each failure to remit (specifically 30 days after the collection of each premium as outlined in the Agency Agreements).  Dkt. # 26 at 6.  Under Defendant's theory, Plaintiff's claims arising out of premiums more than three years old would be barred.  *Id.*  Plaintiff contends that Defendant was bound by an ongoing fiduciary duty to hold the funds in trust for First American and that this duty persisted despite untimely remittance of any individual premiums.  Therefore, it says, the breach did not occur until the Spring of 2021 when Defendant informed Plaintiff that it no longer planned to remit unpaid premiums on policies more than six years old (thereby explicitly repudiating this duty).  Dkt. ## 23 at 14; 24 at 6.  Under Plaintiff's theory, none of the claims in question would be barred by the statute of limitations.

Washington courts[6] have not addressed whether a fiduciary has an ongoing duty in this context, but the Court is persuaded by the logic of various other state and federal district courts.

---

[5]  As mentioned above, Arizona and Oregon have a two-year limitations period for such claims. *Rindlisbacher v. Steinway & Sons Inc.*, 497 F. Supp. 3d 479, 493 (D. Ariz. 2020); *Caligiuri v. Columbia River Bank Mortg. Group*, Civ. No. 07-3003-PA, 2007 WL 1560623, *1, *5 (D. Or. May 22, 2007) (citing O.R.S. § 12.1100(1)).  And Idaho has a four-year limitations period for such claims.  *Jones v. Runft, Leroy, Coffin & Matthews, Chtd.*, 125 Idaho 607, 614, 873 P. 2d 861 (1993) (citing Idaho Code Ann. § 5-224).

[6]  Idaho, Arizona, and Oregon do not expressly address this issue either.  But several cases shed light on the continuing duty of a fiduciary.  *See Vouk v. Champman*, 521 P.3d 712, 720 (Idaho 2022)

Under these courts' reasoning, fiduciaries owe a continuing duty to beneficiaries when holding funds in trust, and a claim for a breach of that duty does not accrue until the legal owner of the funds learns of the repudiation of this duty. *See, e.g.*, *Lattuca v. Robsham*, 442 Mass. 205, 812 N.E. 2d 877 (2004) ("[w]e consistently have held that a cause of action for breach of fiduciary duty does not arise until the beneficiary is aware that repudiation has occurred."); *Tunick v. Tunick*, 201 Conn. App. 512, 536, 242 A. 3d 1011 (2020) (holding that a trustee owes a continuing fiduciary duty to a remaining beneficiary to account for trust assets); *Mitchell v. K&B Fabricators, Inc.*, 274 So. 3d 251, n.5 (Ala. 2018) ("this [c]ourt affirmed the imposition of an ongoing constructive trust…[c]onsequently an ongoing breach of fiduciary duty existed."); *Valley Coca-Cola Bottling Co., Inc. v. Molina*, 818 S.W. 2d 146, 149 (Tex. App. 1991) ("the guardians ad litem were responsible for continuing duties to supervise the minors' trusts."); *Lebanon Cnty. Employees' Ret. Fund v. Collis*, 287 A.3d 1160, 1197 (Del. Ch. 2022) (in case discussing accrual for breach of fiduciary claims, court stated, "When a court determines that a continuing wrong exists, 'the cause of action is timely so long as the last act evidencing the continuing wrong falls within the limitations period.'" (internal citations omitted)); *Tibble v. Edison Int'l*, 575 U.S. 523, 530 (2015) (a new cause of action accrues each time a trustee breaches a continuing fiduciary duty to 'monitor investments and remove imprudent ones.'"); *Wolf v. Travolta*, 167 F. Supp. 3d 1077, 1104 (C.D. Cal. 2016) ("…continuous accrual applies whenever there is a continuing or reoccurring obligation: When an obligation or liability arises on a recurring basis, a cause of action accrues when each time a wrongful act occurs, triggering a

("…Wade's unilateral decision in December 2018 to retain the entire $7,000,000 death benefit from himself was a separate, actionable breach of fiduciary duty…"); *Duniway v. Barton*, 193 Or. 69, 79 (Or. 1951) (in a case concerning a financial agent who invested funds on behalf of the plaintiff and converted them, "[t]here was a continuing fraud and breach of fiduciary duty up to the time of the final settlement."); *In re Downey Family Trust*, No. 1 CA-CV 08-0573, 2010 WL 1487970 *1, *2 (Ariz. Ct. App. Apr. 13, 2010) (affirming probate court's conclusion that "[trustee] engaged in a course of continuous conduct in breach of their fiduciary duties…")

ORDER ON CROSS MOTIONS FOR PARTIAL
SUMMARY JUDGMENT 8

new limitations period." (internal citations omitted)); *Yamauchi v. Cotterman*, 84 F. Supp. 3d 993, 1013–14 (N.D. Cal. 2015) ("The continuous accrual doctrine responds to 'the inequities that would arise if the expiration of the limitations period following a first breach of duty or instance of misconduct were treated as sufficient to bar suit for any subsequent breach or misconduct; parties engaged in long-standing misfeasance would thereby obtain immunity from suit even for recent and ongoing misfeasance.'" (internal citations omitted)).

Defendant's fiduciary duty to hold premiums in trust for Plaintiff is distinct from its duty to remit premiums at the end of each 30-day period.  The Agency Agreements provide that, in addition to remitting premiums at the end of the month, "all Escrow Funds are held in a strictly fiduciary capacity as a settlement agent and the Premiums are held for the benefit of [Plaintiff]." *See, e.g.,* Dkt. # 25 at 7.  The funds were also legally Plaintiff's property regardless of whether Defendant remitted them.  *See Kriedler v. Cascade Nat. Ins. Co*., 182 Wash. App. 557, 569, 329 P.3d 928 (2014) ("Where a premium due to an insurance company is paid by a policy holder to an authorized agent of the company, the payment is deemed in the law to have been made to the company whether the agency remits it to the agency or not." (internal citations omitted)).  And nothing in the contracts suggests that the duty to hold the funds in trust changed after failed or untimely remittance.  *See TST, LLC v. Manufactured Housing Dispute Resolution Program Office of Att'y General*, 17 Wash. App. 2d 662, 672, 485 P. 3d 977 (2021) (in construing a contract, Washington courts will only consider what the parties wrote, giving words in the contract their ordinary, usual, and popular meaning unless the agreement clearly shows a contrary intent).  Thus, despite Defendant's failure to timely remit premiums, it had an ongoing duty to hold the premiums in trust for Plaintiff.

Because Defendant had an ongoing duty to Plaintiff to hold the premiums in trust, Plaintiff's claim accrued when it became aware that Defendant intended to repudiate this duty.

*See, e.g.*, *Lattuca*, 442 Mass. at 812 (holding that a breach of fiduciary claim accrued when the trustee informed the beneficiaries, or they learned, that he would not repay the loan).  Until the Spring of 2021, Defendant did not express an intent to repudiate their fiduciary duty to Plaintiff. Rather, they indicated an intent move forward with the audit and reconcile old premiums.  *See* Dkt. # 24 at 80 ("I have done a review of all of the order from about June 2014 going forward for policy issuance or the need to jacket.  That list is now going to accounting to review for remittances.  I will then be turning to the older files to do the same determination."); *id*. at 83 ("if you are ready to get started on the reconciliation, I can start early next week.  Can we get a list of the files most recent year from you so that I can audit those, have our AP team take a look and get you a response?"); *id*. at 92 ("We have started with 2016-2017 and are working forward to get the most recent years reconciled as these are the most recent and cleanest"); *see Lattuca*, 442 Mass. at 812 (repudiation does not occur if the trustee "instead of flatly rejecting a demand or request…gives some apparently good or plausible reason for his noncompliance, or promises future compliance.").  Thus, the Court concludes that Plaintiff's breach of fiduciary duty claim accrued in the Spring of 2021, Plaintiff commenced suit in August 2021, and the claim is not barred by any statute of limitations.  For this reason, the Court DENIES Defendant's motion as to Plaintiff's breach of fiduciary duty claims.

  ii.  Elements

  Plaintiff also argues—and Defendant does not dispute—that Defendant breached its fiduciary duty to Plaintiff as a matter of law.  *See* Dkt. # 23 at 13–14.  To establish a claim for breach of fiduciary duty in Washington, "[t]he plaintiff must prove (1) existence of a duty owed, (2) breach of that duty, (3) resulting injury, and (4) that the claimed breach proximately caused the injury." *Micro Enhancement Intern., Inc. v. Coopers & Lybrand, LLP*, 110 Wash. App. 412,

433-34, 40 P.3d 1206 (2002).[7]   The Court concludes that these elements are met.  As a title insurance agent, NexTitle held premiums "for the benefit of First American" and had a fiduciary duty to "safely maintain and preserve all property . . . entrusted to [it] by First American."  Dkt. # 25 at 7, 31, 55, 81.  There is no dispute that in the spring of 2021 NexTitle stopped cooperating in the audit and failed to remit older unpaid premiums to First American.  *See generally* Dkt. ## 26, 29, 32.  Accordingly, First American has been injured in the amount of unpaid premiums NexTitle has failed to remit.  The Court therefore GRANTS Plaintiff's motion as to its breach of fiduciary duty claims.

   iii. Independent Duty Doctrine

   Defendant raises Washington's independent duty doctrine in their opposition to Plaintiff's Washington claims for breach of fiduciary duty.  Dkt. ## 26 at 6 n.10; 29 at 12–14.  Under the independent duty doctrine, a tort remedy is unavailable to a party unless the tort arose independently of the applicable contract's privately negotiated terms.  *Eastwood v. Horse Harbor*, 170 Wash. 2d 380, 394, 241 P. 3d 1256 (2010).  *See also Donatelli v. D.R. Strong Consulting Engineers, Inc.*, 163 Wash. App. 436, 445, 261 P. 3d 664 (2011).  The Court concludes that the independent duty doctrine does not apply because Washington law imposes a separate duty on Defendant that extends beyond the Agency Agreements.  Dkt. # 25 at 6–7; RCW 48.17.480(3) ("Any person…who received funds which belong or should be paid to another person as a result of or in connection with insurance transaction is deemed to have received the funds in a fiduciary capacity.").  Defendant cites *Cornelius v. Fidelity Nat. Title Co. of Washington*, No. C08-754MJP, 2010 WL 1406333, *1, *5 (W.D. Wash. Apr. 1, 2010), a

---

   [7] The elements of a breach of fiduciary duty claim in Arizona, Idaho, and Oregon are substantively the same.  *See Shriners Hospitals for Crippled Children v. Gardiner*, 152 Ariz. 527, 528-30, 733 P.2d 1110 (Ariz. 1987); *Tolley v. THI Co.*, 140 Idaho 253, 261, 92 P.3d 503 (2004); *Pereira v. Thompson*, 230 Or. App. 640, 654, 217 P.3d 236 (2009).

ORDER ON CROSS MOTIONS FOR PARTIAL
SUMMARY JUDGMENT 11

1   Western District of Washington case in which the court dismissed a fiduciary duty claim under

2   the independent duty doctrine.  Dkt. # 29.  But *Cornelius* is inapposite.  There, the court pointed

3   out that "Washington law limits an escrow agent's duties 'to those set forth in the escrow

4   agreement.'"  *Cornelius*, 2010 WL 1406333, at *5.  Here, unlike in *Cornelius*, Defendant had a

5   fiduciary duty prescribed by the RCW that was not coextensive with the contracts.  Thus, the

6   independent duty doctrine does not bar Plaintiff's claims.

7           C. Plaintiff's Breach of Contract Claims

8           Plaintiff argues that Defendant breached the Agency and Termination Agreements as to

9   all unpaid premiums, and that none of these claims are barred by the statutes of limitations.  Dkt.

10  # 23 at 18.  Defendant argues that the statute of limitations bars Plaintiff's breach of contract

11  claims related to premiums to be paid to First American more than six years before this action

12  was filed.  Dkt. # 26 at 1.

13                  i.      Acknowledgment of Debt

14          Plaintiff concedes that the statute of limitations for breach of a written contract is five

15  years in Idaho and six years in Arizona, Oregon, and Washington.  Dkt. # 23 at 18.  But Plaintiff

16  argues that Defendant's acknowledgment to pay all outstanding premiums in the Termination

17  Agreement revives the statute of limitation for its breach of contract claims.  *Id*.  Defendant

18  disagrees and argues that the Agreements do not identify or acknowledge the debt with sufficient

19  specificity to constitute a revival of the statute of limitations.  Dkt. # 29 at 8.

20          A time-barred breach of contract claim may be maintained under RCW 4.16.280 "by a

21  written acknowledgement or promise signed by the debtor that recognizes the debt's exercise, is

22  communicated to the creditor, and does not indicate and intent not to pay."  *In re Tragopan*

23

24

ORDER ON CROSS MOTIONS FOR PARTIAL
SUMMARY JUDGMENT 12

*Properties, LLC*, 164 Wash. App. 268, 273, 263 P. 3d 613 (2011).[8]  Washington courts differentiate between acknowledgments written before and after the statutory period.  *Id*. at 273.  "Where a debt is acknowledged after the statute of limitations has run, the action must be upon the new agreement and, in nature of an original obligation should be strictly construed."  *Id*; *see also Griffin v. Lear*, 123 Wash. 191, 199, 212 P.271 (1923) ("[A]n acknowledgment made after the statute has run gives a new cause of action, for which the old debt is consideration.")

Washington courts have found that the writing "does not require that both an acknowledgment and a promise occur; it merely states that either need be present to remove the case from the strictures of the statute of limitations." *Lombardo v. Mottola*, 18 Wash. App. 227, 230, 566 P.2d 1273, 1275 (1977); *see also U.S. Bank NA. v. Kendall*, No. 77620-7-I, 2019 WL 2750171 *1, *6 (Wash. Ct. App. July 1, 2019) (a short sale letter recognizing the existence of a lien on a property was sufficient); *Griffin*, 123 Wash. at 199 (the statement, "I can only promise to pay the $1,600 with interest in some future time.  You will never lose through me," was sufficient); *Lombardo*, 18 Wash. App at 228 (the statement, "I am writing this letter to you regarding the note that my wife Ada Mottola and I gave you on the subject loan of $3,000 in cash made to us by you on December 23, 1964.  In view of our financial condition the last few years we have been unable to pay you this note.  However, we are authorizing you to contact Oakland Terrazzo Co. to the attention of Mr. Minio Pella, who has an obligation to us in the amount of $3,000 and this letter will authorize Mr. Pino Pella of Oakland Terrazzo to pay you direct, the $3,000 owing to me on the account of the note that we owe Mr. and Mrs. Lombardo," was

---

[8]  A written acknowledgment of indebtedness may similarly revive a breach of contract claim in Arizona, Idaho, and Oregon.  *See* Ariz. Rev. Stat § 12-508; Idaho Code Ann. § 5-238; *Clostermann v. Rode*, 138 Or. 412, 415, 193 P. 2d 532 (1948).

1    sufficient).  *Cf. Wolphs v. Sapp*, 2015 WL 4730229 *1, *2 (Wash. Ct. App. Aug. 10, 2015) (the

2    statement, "Don agreed to take [$13,000 or $17,000] for his portion" was not sufficient).[9]

3           On April 14, 2020, the parties entered into the Termination Agreements which provide in

4    part, "[i]mmediately following the Termination Date, Former Policy Issuing Agent will comply

5    with all of the obligations of Former Policy Issuing Agent following termination provisions set

6    forth in the Agency Agreement."  Dkt. # 25 at 91–109.  Upon termination of the Agency

7    Agreements the Agency Agreements require Defendant to "[r]emit all unpaid premiums and

8    outstanding indebtedness to First American."  Dkt. # 25 at 14; *see also id.* at 44, 63, 87.  Plaintiff

9    cites this contract language, along with several email correspondences discussing the audit, as

10   evidence of a written acknowledgment of the debt.  Dkt. # 23 at 21.  Defendant contends that the

11   language in the Termination Agreements does not constitute an acknowledgment or promise to

12   revive stale claims barred by the statute of limitations.  Dkt. # 26 at 5 ("Indeed, the language

13   relied upon by First American does not even mention unpaid premiums or any other alleged debt,

14   much less an agreement to extend the statute of limitations.").

15          The Court concludes that the language in the Termination Agreements does not constitute

16   a written acknowledgment of debt.  Unlike cases in which Washington courts have found an

17   acknowledgment to have occurred, the language in the Termination agreements does not affirm

18   the existence of a specific debt; it simply identifies the process for remitting unpaid premiums if

19   any such premiums exist.  Similarly, the email correspondence cited by Plaintiff does not

20   constitute a written acknowledgment of debt because it does not reference a specific debt owed.

21

22          [9] In finding that this statement did not constitute a written acknowledgment of debt, the court
     stated, "The statement does not unequivocally recognize the existence of a debt to be paid to the Wolphs.
23   It does not clearly reference the debt owed to the Wolphs for the purchase of property.  If anything, it may
     refer to a past debt, as it is written in past tense.  But the statement makes no suggestion that any debt
24   remained at the time."  *Id.*

Thus, neither the Termination Agreements nor the email correspondence in question serve to revive the statute of limitations as to Plaintiff's breach of contract claims.

     ii.   Breach of Termination Agreements

   In the alternative, Plaintiff contends that the Termination Agreements constitute new contracts in and of themselves, and that Defendant breached this new contract by failing to remit the older premiums.  Dkt. # 23 at 22.  Defendant does not address this contention, only generally invoking the statute of limitations as to Plaintiff's breach of contract claims.  *See generally* Dkt. # 29.  The Court agrees with Plaintiff and finds that Defendant is in breach of the Termination Agreements.

   To prevail on a breach of contract claim, the party must establish (1) a duty imposed by the contract (2) a duty that was breached, and (3) damages proximately caused by the breach.  *Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 78 Wash. App. 707, 712, 899 P. 2d 6 (1995).[10]  The Termination Agreements require Defendant to "comply with all of the obligations of Former Policy Issuing Agent following termination provisions set forth in the agreement."  Dkt. # 25 at 91, 96, 101, 106.  This statement incorporates the Agency Agreements by reference, and those agreements require Defendant to "[r]emit all unpaid Premiums and outstanding indebtedness to First American."  Dkt. # 25 at 14; *see also id.* at 44, 63, 87.  Defendant contends that any breach of contract occurred when Defendant failed to remit premiums at the end of 30 days.  Dkt. # 26 at 4.  But this contention is not supported by the language and plain meaning of the contracts.  The Termination Agreements address the obligations of the party *after* termination, which was long after Defendant first failed to remit premiums.  Dkt. # 25 at

---

[10]  The elements for breach of contract claims are substantially the same in Arizona, Idaho, and Oregon.  *See Graham v. Asbury*, 112 Ariz. 184, 185, 540 P. 2d 656 (1975); *Path to Health, LLP v. Long*, 161 Idaho 50, 57, 383 P. 3d 1220 (2016); *Moyer v. Columbia State Bank*, 316 Or. App. 393, 402-03, 505 P. 3d 26 (2021).")

1   105–109.  The Termination Agreements are new contracts that imposes a new duty on Defendant

2   to remit all unpaid premiums upon termination.  A breach of this duty occurred when Defendant

3   refused to remit older unpaid premiums.[11]

## IV

### CONCLUSION

6        For these reasons, the Court GRANTS Plaintiff's motion and DENIES Defendant's

7   motion.

8        Dated this 23rd day of June, 2023.

John H. Chun
John H. Chun
United States District Judge

---

[11] Defendant cites *Alderson v. State* to support its argument that a failure to repay is not a new breach.  105 Or.App.574, 580, 806 P. 2d 142 (1991) ("The breaches, if any, were defendants' failures to follow the prescribed contribution requirements, not their refusal to remedy those failures." (internal citations omitted)).  But there was no second contract in *Alderson* and its holding is therefore inapposite. Here, the Termination Agreements imposed new obligations on Defendant that they breached by failing to remit older unpaid premiums.

ORDER ON CROSS MOTIONS FOR PARTIAL
SUMMARY JUDGMENT 16